# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROBERT L. BELAIR and LORI N. BELAIR,**

      **Plaintiffs,**

v.                                                    Case No: 6:21-cv-165-WWB-DCI

**EXPERIAN INFORMATION SOLUTIONS, INC. and HICV CLUB VACATIONS INCORPORATED,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:** Holiday Inn Club Vacations Inc.'s Motion to Dismiss for Failure to State a Claim (Doc. 16)
>
> **FILED:** March 26, 2021
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

### I. Procedural Background

In January 2021, Robert L. Belair and Lori N. Belair (Plaintiffs) initiated this case against Defendants Experian Information Solutions, Inc. (Experian) and Holiday Inn Club Vacations Incorporations (HICV) (collectively Defendants). Doc. 1. Plaintiffs subsequently filed an Amended Complaint against Defendants alleging violations of the Fair Credit Reporting Act, 15

U.S.C. § 1681, *et. seq.*, (FCRA), and the Florida Consumer Collection Practices Act, 28 U.S.C. § 1367, (FCCPA). Doc. 14. That is the operative pleading before the Court.

Experian filed its Answer and Affirmative Defenses, and HICV filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the Motion). Docs. 14, 17. Plaintiffs have filed an opposition to the Motion (the Response). Doc. 24. The Motion has been referred to the undersigned and is ripe for consideration. Doc. 16.

For the reasons stated in this Report, it is recommended that the Motion be granted in part and denied in part.

## II.     Plaintiffs' Allegations

According to the Amended Complaint, on or about July 11, 2017, Plaintiffs entered into an agreement with HICV for the purchase of a timeshare membership (the Agreement). Doc. 14 at 9. Plaintiffs executed a "corresponding" promissory note. *Id*. Pursuant to the Agreement, the transaction is not deemed closed until Plaintiffs make the first twelve timely payments "at which time the deed will be recorded." *Id*. at 9-10. The Agreement states that time is of the essence with respect to HICV's performance and, upon its default of any of the terms, Plaintiffs may elect to rescind and terminate the Agreement. *Id*. at 10. The Agreement also includes a clause stating that upon Plaintiffs' default of any term, HICV shall retain all monies Plaintiffs have paid until the date of the default as liquidated damages. *Id*.

Between August 2017 and March 2019, Plaintiffs made payments to HICV. *Id*. As of March 25, 2019, HICV had not yet recorded the deed in Plaintiffs' names even though Plaintiffs made their first twelve payments to HICV in accordance with the terms of the Agreement. *Id*. Plaintiffs, therefore, allege that the sales transaction was closed as of March 25, 2019. *Id*.

On or about February 16, 2018, Plaintiffs gave notice to HICV, through counsel, that they retained Finn Law Group (the Law Group) with respect to the debt (the Debt) and provided the Law Group's contact information. *Id*. at 11. The notice advised HICV to cease all direct communication with Plaintiffs regarding the Debt, and directed communications be made to the Law Group. *Id*. The notice also disputed the validity of the sales transaction, which Plaintiffs characterize as "creating the Debt," and advised that Plaintiffs considered the transaction null and void and that they no longer intended to make any payments to HICV. *Id*. Plaintiffs state that to the extent they owed any balance to HICV as of February 16, 2018, Plaintiffs rescinded the Agreement allowing HICV to retain any monies previously paid as liquidated damages. *Id*. at 12.

Even so, Plaintiffs state that they continued to make payments because they did not want to damage their credit. *Id*. Plaintiffs state that on or about April 23, 2019, after defaulting on their March 2019 payment, they sent a second notice through the Law Group again advising HICV that Plaintiffs considered the Agreement to be null and void and requested that HICV provide written confirmation affirming the cancelation. *Id*. The second notice states that "if [HICV] has reported this account to the credit bureaus, we demand a full trade line deletion be completed." *Id*. at 12-13. Plaintiffs allege that since they defaulted prior to closing, no indebtedness should have been reported in their Experian consumer liability/credit reports. *Id*. at 13.

Plaintiffs allege that HICV continued to communicate indirectly with Plaintiffs in attempt to collect "the Debt" and "repeatedly reported a balance due and past-due on the Debt to Experian (that was not owed post-default given the liquidated damages clause drafted by HICV)." *Id*. On August 5, 2019, HICV recorded the deed in Plaintiffs' names. *Id*. at 13-14.

Plaintiffs claim that from February 4, 2018 through the date of the Amended Complaint, HICV sent at least 35 billing statements and at least nine collection letters "regarding Plaintiffs and the Debt" to the Law Group. *Id*. at 14.

Between December 2019 through June 10, 2020, Plaintiffs allege that they individually made three complaints to Experian disputing Experian and HICV's "objectively-inaccurate factual reporting of the tradeline account associated with the Debt." *Id*. at 15-24.  The letters attached to the Complaint reflect that Plaintiffs advised Experian that payment was ceased in May 2019 and, therefore, the Orange Lake/Wilson Resort finance account terminated. Doc. 14-6 at 2, 14-8 at 2, 14-10 at 2, 14-13 at 2, 14-15 at 2, 14-17 at 2-3.  The letters reflect that the date of the dispute was June 2019 to the present and each requested an update to show that the account status as closed with a zero balance as of June 2019.  *Id*.

Plaintiffs also complain about other inaccuracies HICV allegedly reported to Experian separate from the "zero-dollar balance due" on the Debt.  Plaintiffs claim that the following "factual inaccuracies" occurred with respect to the reporting:

1. Plaintiffs were not "OK" and current in March, April, and May 2019 (and inaccurate reporting of the date of first delinquency would impermissibly extend the purge date);

2. Defendants reported incomplete "ND"/No Data for April and October 2018 (when Plaintiffs paid);

3. Defendants reported false and increasingly-delinquent balance amounts;

4. Defendants reported several additional incomplete/false instances of "ND"/No Data in the Account History; and

    5.    Defendants reported wildly varying and false "DPR"/Dates Payment Received (e.g., Defendants reported that Plaintiffs somehow paid their May 2019 through October 2019 payments on March 11th).

Doc. 14 at 15-23.

As a result of the reports to Experian, Plaintiffs claim that they were denied credit, incurred less favorable terms on consumer loans and other consumer transactions, were deterred from making additional credit applications, and were continually evaluated for credit using consumer reports that inaccurately reported the Debt with significant balances due and past-due. *Id*. at 25. Also, Plaintiffs state that they suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, loss of sleep, and confusion, and have dealt with stress and "anxiety of feeling hopeless." *Id*.

HICV moves to dismiss Counts One, Two, and Three of the Amended Complaint for failure to state a claim under Rule 12(b)(6). Doc. 16.[1]

### III.    Standard

In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and

---

[1] The Motion does not address Counts Four and Five which are brought solely against Experian. While the Motion initially seeks to dismiss the Amended Complaint, in the relief section of the pleading, HICV specifies that Counts I, II, and II are due to be dismissed. *See* Doc. 16 at 1, 21.

conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Further, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

  IV. **Discussion**

    **A. Count One – Unlawful Debt Collection Practices – Violation of Florida Statutes Section 559.72(7)**

In Count One of the Amended Complaint, Plaintiffs claim that they sent repeated notices to HICV that they would no longer be making payments under the explicit terms of the Agreement and that they were represented by counsel. *Id.* at 26-27. Plaintiffs allege that HICV failed to timely record the deed as required and, therefore, the Agreement was null and void. *Id.* at 26. Nonetheless, Plaintiffs claim that HICV sent over 40 communications to Plaintiffs' counsel in an attempt to collect the Debt. *Id.* at 26-27.

Plaintiffs contend that this conduct violated the Florida Consumer Collection Practices Act, Fla. Stat. section 559.72(7), (FCCPA) because it served no purpose other than to annoy, abuse, and harass Plaintiffs into making a payment on the Debt leading Plaintiffs to believe that HICV would continue to send debt collection communications until the Debt was paid. *Id.* at 27-28.

Section 559.72(7) prohibits the following:

In collecting consumer debts, no person shall:

(7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his

- 6 -

>family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

HICV argues that Count One is due to be dismissed because Plaintiffs fail to state a cause of action under Rule 12(b)(6). The undersigned is not persuaded that the requested relief should be granted.

The argument for dismissal is two-fold. First, HICV asserts that the facts as alleged do not amount to the type of behavior that is considered to be harassing or abusive and is, instead, stated in an impermissible, conclusory manner. Doc. 16 at 12-13. Specifically, HICV argues that Plaintiffs' "lone attempt" at pleading a supporting allegation is the vague claim regarding the number of communications sent to Plaintiffs' lawyers which is not sufficient to survive a motion to dismiss. *Id*. at 12.

The undersigned, however, does not view Plaintiffs' allegations as mere labels, conclusions, or formulaic recitations of the elements as HICV describes, nor do Plaintiffs simply rely upon the sheer number of communications to counsel. Certainly, the number of communications is an appropriate factor to consider in determining whether the contact is abusive. But Plaintiffs' allegations go beyond the frequency of the communications.

The Court must look at all of the allegations in Count One. *Miceli v. Orange Lake Country Club, Inc.*, 2015 U.S. Dist. LEXIS 117226, at *12 (M.D. Fla. Aug. 5, 2015) (citing *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st DCA 1977) (finding that while frequency is a part of the determining whether the conduct is reasonably likely to harass or abuse, the court must also look at the totality of the circumstances including the context and purpose of the calls.).

Here, Plaintiffs have clearly alleged that the number of communications is considered harassment in light of: (1) Plaintiffs' notification to HICV as to why they considered the Agreement breached; (2) HICV's knowledge that no balance was due based on the Agreement; (3)

Plaintiffs' repeated notice to HICV that they retained the Law Group, which notice included the contact information; and (4) Plaintiffs' repeated notification that they would make no further payments. Doc. 26-27. Further, Plaintiffs alleged that the purpose of the communications was to collect the Debt. *Id*. at 26. As such, the frequency of the communications is offered in the context of Plaintiffs' repeated notice to HICV regarding their position on the Debt, which position did not change, and HICV's disregard of those alleged notices and continued attempt to collect the Debt at least 40 times.

The undersigned recognizes that HICV cites to *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F.Supp. 3d 1294, 1305 (M.D. Fla. 2016), for the apparent proposition that dismissal is appropriate where—as HICV contends here—there is no allegation that the communication was threatening, there is no "real detail" as to the nature or content of the communication, and the communication was not intrusive. However, the undersigned recommends that the facts of that case are inapposite. In *Leahy-Fernandez*, the defendant's communications consisted of one piece of mail sent monthly that did not use abusive language or threaten the plaintiff, and the defendant there did not contact the plaintiff's friends, co-workers, or family members. As in *Leahy-Fernandez*, there is no allegation that HICV used abusive or threatening language in the communications. *See* Doc. 14. However, Plaintiff here has alleged that the nature of the 40 plus communications was for the purpose of attempting to collect a debt that was not owed in spite of Plaintiffs' explicit notice that they did not intend to make payment under the terms of the Agreement. The undersigned finds that these allegations are not comparable to the one piece of monthly mail sent in *Leahy-Fernandez*.

Moreover, HICV's assertion that there is no "real detail" as to the nature of the content of the communication is not supported by the record. Plaintiffs attached to the Amended Complaint

60 pages of the written communications that largely advise Plaintiffs of the past due amount and include the warning that a failure to bring the account current may result in unpaid collection items on a credit report. *See* Doc. 14-5. So, while the Amended Complaint may not include additional details of the communications, the attachments do provide this information. "An assessment of plausibility includes exhibits attached to the complaint." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012).

Finally, on this argument, even though HICV adamantly contends that there is not "any basis in law" that it was required to "just go away" regardless of Plaintiffs' "flimsy" theory of harassment, HICV presents no persuasive or binding authority of its own to demonstrate that the facts as alleged cannot state a claim under the Florida debt statutes. As such, the undersigned finds that Plaintiffs' allegations are sufficient and supported by more than conclusory statements.

Second, HICV argues that dismissal is appropriate because section 559.72(7) only applies to communications with the debtor or any member of the debtor's family and does not prohibit communications to attorneys like the Law Group. HICV's argument is well-taken given the language of the statute, but it cites to no other law in support of this position. In other words, HICV's say-so does not help the Court rule in its favor. *See* Local Rule 3.01(a).

In any event, the undersigned is unconvinced that the Florida law does not cover communications to attorneys. The undersigned finds guidance from another court's discussion of FCCPA:

> Both subsections of the FCCPA under which Plaintiffs allege violations require communication from a debt collector to a debtor. Fla. Stat. § 559.72(7), (18). The FCCPA and its federal counterpart—the Fair Debt Collection Practices Act ("FDCPA")—define communication as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.' Fla. Stat. § 559.55(2); 15 U.S.C. § 1692a. While neither the FCCPA nor the FDCPA specifically define 'indirect communication,' the scope of such communications is 'extremely broad.' *Dauval v. MRS BPO, LLC*, No. 8:11-cv-2703-T-MAP, 2013

> U.S. Dist. LEXIS 189109, 2013 WL 9921550, at *8 (M.D. Fla. June 27, 2013) (quotation omitted).  Indeed, the definition of 'communication'—which encompasses the 'indirect' language—includes the conveyance of information through *any* medium. Fla. Stat. § 559.55(2) (emphasis added).  Moreover, at least some of Plaintiffs' allegations clearly state a claim for indirect communications.

*Miceli*, 2015 U.S. Dist. LEXIS 117226, at *7-9.  Admittedly, *Miceli* did not involve this same argument regarding counsel, but given the "indirect communication" language of the statute and its broad interpretation, the undersigned does not find that dismissal is appropriate based on this argument, especially given HICV's failure to refer the Court to any authority to the contrary.

As such, the undersigned recommends that Plaintiffs can proceed with Count One at this juncture in the case.

### B. Count Two – Unlawful Debt Collection Practices – Violation of Florida Statutes Section 559.72(9)

In Count Two of the Amended Complaint, Plaintiffs allege that HICV violated another subsection of the FCCPA by communicating with Plaintiffs in an attempt to collect the Debt, which HICV knew did not exist.  Pursuant to section 559.72(9), no person shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

HICV argues that Plaintiffs do not state a cause of action for a violation of the Florida law "because [Plaintiffs'] claims are wholly reliant on an erroneous legal theory."  Doc. 16 at 15. HICV asserts that the Amended Complaint on its face cannot plausibly establish a violation because the claim relies solely upon a flawed legal argument and Plaintiffs' claim that the Debt is not owed "is not a factual issue but rather involves a complex legal dispute."  *Id*. at 22-23. Specifically, HICV contends that it "cannot be deemed to have had knowledge that the Debt did not exist when such knowledge would require [HICV] to make a legal determination on questions which can only be resolved by a court of law."  *Id*. at 15-16.

The undersigned recommends that the Motion with respect to Count Two be denied because HICV's argument includes absolutely no citation to authority in support of its request for dismissal. In short, HICV's conclusory characterization of Plaintiffs' allegations as "flawed" does not sufficiently demonstrate that Plaintiffs failed to state a claim under the Florida Law. *See* Local Rule 3.01(a).[2]

Further, the undersigned recommends that Plaintiff has stated a sufficient claim under section 559.72(9). Under the Florida law, a plaintiff must allege facts from which the court can reasonably infer that the defendant "either (1) had actual knowledge that the debt was not legitimate or (2) asserted a legal right that did not exist and had actual knowledge such right did not exist." *Meyer v. Fay Servicing, LLC*, 385 F.Supp. 3d 1235, 1243 (M.D. Fla. 2019). "Simply pleading the defendant had knowledge isn't enough – the plaintiff must plead factual allegations showing how the defendant had that knowledge." *Barkley v. HICV Club Vacations Inc. et. al.*, Case No. 6:20-cv-964-Orl-37GJK (M.D. Aug. 4, 2020) (citing *Reese v. JP Morgan Chase & Co.*, 686 F.Supp. 2d 1291, 1312 (S.D. Fla. 2009)).

---

[2] The undersigned notes that HICV refers the Court to two other sections of the Motion for a further explanation of the challenge to Plaintiffs' legal theory, but absent from those sections is any authority addressing section 559.79(9). *See* Doc. 16 at 6-12, 15. Moreover, the undersigned notes that HICV contends in these sections that Plaintiffs' notices of recission have no legal effect and their own intentional default does not excuse them from further obligations under the note. Doc. 16 at 6-12. Again, HICV identifies this as Plaintiffs' flawed legal theory regarding the unilateral cancelation of the Debt. *Id*. The undersigned recommends that dismissal at this stage of litigation based on this argument is not appropriate. HICV provides no citation to authority that would support a finding that a Rule 12(b)(6) motion is the proper vehicle to determine that the facts as alleged cannot support a cause of action under the FCRA or FCCPA. While HICV cites to a couple of cases regarding general tenets of law on material breach, there is no memorandum of authority or analysis demonstrating that the Defendants' alleged harassment, threat to enforce the Debt, and failure to correctly report disputed information cannot support a claim taking into account the recission of the Agreement. In other words, if Plaintiffs' legal theory of the underlying basis for recission is flawed, HICV has not shown why such a flaw means dismissal is actually warranted.

Plaintiffs claim in the Amended Complaint that under the Agreement the transaction is not deemed closed until Plaintiffs make the first 12 timely payments and the deed is recorded with time being of the essence. Doc. 14 at 28. Plaintiffs allege that they were permitted to elect to rescind or terminate the Agreement upon HICV's default which occurred because of the failure to record. *Id*. at 28-29. Plaintiffs allege that, through the Law Group, they advised HICV on multiple occasions that the validity of the Agreement was in dispute, and Plaintiffs no longer intended to make payments due to HICV's breach allowing HICV to retain money paid until the date of the default. *Id*. at 28-29. Plaintiffs assert that they advised HICV that they disputed the Debt as a result of fraudulent representations made by HICV's employees or representatives at the time of the sale and advised HICV that it failed to timely perform its duties under the Agreement. *Id*. at 29. Since HICV had this knowledge that the Agreement was null and void, Plaintiffs claim that the 40 written communications sent to the Law Group between February 2018 and the filing of the complaint was an attempt to collect an illegitimate debt which violated section 559.72(9). *Id*. Plaintiffs also attach counsel's letters to HICV as an exhibit to Amended Complaint. Doc. 14-2.

Plaintiffs refer the Court to *Barkley v. Holiday Inn Club Vacations, Inc. et al.*, Case No. 6:20-cv-964-Orl-RBD-GJK, as persuasive authority that they can survive a Rule 12(b)(6) motion based on these allegations. The undersigned agrees that *Barkely* is instructive on this issue and, like the plaintiff in that matter, Plaintiffs do not merely allege that they informed HICV that they disputed the Debt but allege why the Debt was illegitimate, why HICV's asserted right did not exist based on the Agreement, and how HICV knew this from its communications.

The undersigned is mindful of the *Barkely* court's determination that "whether Plaintiff can establish the debt was illegitimate or HICV's asserted right didn't exist – and HICV's requisite knowledge – is an issue for another day," and recommends that it can be reasonably inferred from

Plaintiffs' allegations, taken as true, that HICV had actual knowledge that the Debt was illegitimate or asserted a right it knew did not exist.

Accordingly, the undersigned recommends that the Motion is due to be denied on this claim because Defendant has not provided a memorandum of authority under the Local Rules with respect to Count Two and Plaintiff has sufficiently stated a cause of action.

### C. Count Three – Fair Credit Reporting Act – Violation of 15 U.S.C. § 1681s-2(b)

The remainder of the Motion addresses Count Three of the Amended Complaint brought against HICV under the FCRA. Doc. 16 at 16-23. Plaintiffs allege that HICV willfully or negligently published or furnished inaccurate and incomplete trade-line information within Plaintiffs' credit reports, failed to fully and properly re-investigate Plaintiffs' disputes, failed to review all relevant information regarding the same, and failed to correctly report the Debt on Plaintiffs' Experian credit reports after re-investigating Plaintiffs' disputes. Doc. 14 at 30. Plaintiffs complain that HICV willfully and negligently reported and continued to report the erroneous credit information to Experian despite receipt of Plaintiffs' disputes. *Id*. As a result, Plaintiffs allege that HICV violated § 1681s-2(b). *Id*. at 31.

The FCRA creates a private right of action against furnishers of information to credit reporting agencies. *See Green v. RBS Nat. Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008); 15 U.S.C. § 1681s-2(b)(1). Section 1681s-2(b) provides that after receiving a notice of dispute, a furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person

        furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
  i. modify that item of information;
  ii. delete that item of information; or
  iii. permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

HICV moves to dismiss Count III in its entirety. Count III is premised on two different categories of allegedly inaccurate information—disputed and undisputed information.[3] The undersigned will address the categories separately because the recommendation for each is not the same.

### 1. Disputed Information – Inaccuracies with respect to the "zero-balance" due on the Debt.

In relevant part, Plaintiffs allege that they sent letters to Experian disputing the "objectively-inaccurate factual reporting of the tradeline account associated with the Debt" which provided sufficient information to allow Experian to identify the account in question, identify that HICV failed to timely record the deed and close the transaction, and to update the account to "reflect a zero-dollar ($0.00) balance due or past-due at minimum." Doc. 14 at 15. Plaintiffs claim that Experian communicated the dispute to HICV who verified the factual inaccurate reporting of the tradeline account associated with the Debt to Experian and continued to report the Debt with a balance due and past-due amount. *Id*. at 15. As such, Plaintiffs allege a viable claim under § 1681s-2(b)(1).

---

[3] Plaintiffs describe this category as such in the Response to the Motion to Dismiss. Doc. 24 at 16.

HICV moves to dismiss Court Three for failure to state a claim reiterating that Plaintiffs rely on a flawed legal argument regarding the cancelation of the Debt. Doc. 16 at 17. HICV contends that the Plaintiffs do not claim that the information reported is inaccurate but that the information should have been omitted or deleted as a result of their notices of recission. HICV states that the Debt was never canceled so this premise is "flawed." *Id*. at 17-18. HICV explains further that the Plaintiffs fail to allege any factual inaccuracy with respect to the credit reporting, but their position concerns a legal contractual dispute which is insufficient to state a claim for a violation under the FCRA. Doc. 16 at 18. Specifically, HICV asserts that "[a]s it pertains to the [Plaintiffs] primary grievance – that they were allegedly no longer obligated to pay the debt by virtue of the liquidated damages provision – the [Plaintiffs] merely allege a legal dispute; they fail to allege a factual inaccuracy in the credit reporting sufficient to support an FCRA claim." Doc. 16 at 16.

HICV's argument has some draw to it. "A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring a suit against a furnisher under § 1681s-2(b)." *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)); *see also*, *Leones v. Rushmore Loan Mgmt. Servs. LLC*, 2017 WL 6343622, at *3 (S.D. Fla. Dec. 11, 2017) ("Plaintiff has alleged at best a legal defense to the debt, not a factual inaccuracy in Rushmore's reporting. This is an insufficient basis for her asserted FCRA claims against a furnisher under § 1681s-2(b); *Bauer v. Target Corp.*, 2013 WL 12155951, at *13 (M.D. Fla. June 19, 2013) ("[A] furnisher's duty to investigate extends to factual inaccuracies, not legal disputes). Here, Plaintiffs' claim is premised on what appears to be a legal dispute as to whether they were required to make payments under the Agreement given the alleged default.

Further, as HICV describes it, a court in this Division dismissed a plaintiff's claim against HICV with a "nearly identical fact pattern." Doc. 16 at 19 n.1, citing *Mayer v. HICV Club Vacations Inc.*, Case No. 6:20-cv-2283-GAP-EJK (M.D. Fla. Mar. 9, 2021). As HICV correctly states, *Mayer* involves an analysis of a contractual provision and nearly identical allegations regarding breach resulting in a violation of the FCRA.[4] In the March 9, 2021 order, the court in *Mayer* found that whether the plaintiff was obligated to continue making payments under the agreement is a legal contractual dispute and not a factual issue. *Mayer*, Case No. 6:20-cv-2283-GAP-EJK, Doc. 27 at 5 ("Even if Mayer is correct with respect to his interpretation of the agreement, a legal error on HICV's part cannot support a FCRA claim."). As such, the *Mayer* court found that the plaintiff failed to state an FCRA claim and the count was dismissed. *Id.*

But, as Plaintiffs respond in their supplemental notice of authority, *Mayer* actually lends more support to their position that the claim can survive a motion to dismiss at least with respect to the disputed zero-balance on the Debt. Doc. 27. The March 9, 2011 order in *Mayer* dismissed the FCRA claim *without prejudice* and permitted the plaintiff to amend the pleading, which he did. *Mayer*, Case No. 6:20-cv-2283-GAP-EJK, Doc. 28. Another request for dismissal followed but this time, on June 8, 2021, the court ruled in the plaintiff's favor in part. The June 8, 2021 order in *Mayer* took into consideration a more recent Eleventh Circuit decision, *Losch v. Nationstar Mortgage, LLC*, 995 F.3d 937 (11th Cir. 2021), and found the following:

> A liquidation provision—such as the one in the Agreement—would typically qualify as a legal dispute and not a factual inaccuracy. *See Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020). As Mayer points out, however, this is not the first time that HICV has faced this issue in court. HICV

---

[4] *Mayer* is also a case involving a timeshare agreement with HICV where the plaintiff made payments for a certain time and then ceased payment. Through counsel, the plaintiff mailed HICV letters that disputed the validity of the agreement and advised HICV that the plaintiff elected to rescind the agreement and permit the retention of all payments as liquidated damages. *See* Case No. 6:20-cv-2283-GAP-EJK, Doc. 27 at 2.

> previously brought a foreclosure action in state court against another party. *Orange Lake Country Club, Inc. v. Arndt*, 2016-CA-6342 (Fla. 9th Cir. Ct. Aug. 14, 2019). In that case, the court determined that pursuant to a liquidated damages provision identical to the one at issue here, HICV was not entitled to a deficiency. The court entered this judgment on August 19, 2019, several months before Mayer submitted his disputes to Experian. A federal court in this district similarly held that a purchaser plausibly alleged that HICV was not entitled to payments following a purchaser's termination pursuant to the liquidated damages provisions in an identical contract. *See Barkley v. HICV Vacations Inc.*, 6:20-cv-964-Orl (M.D. Fla. Aug 4. 2020) (Doc. 40). *Losch* instructs that under certain circumstances, a court's order on a disputed legal issue can change that issue into an undisputed fact. *See Losch*, 995 F.3d at 946. The Court acknowledges that these other judgments pertain to HICV's contracts with other parties and are not dispositive of HICV's contract with Mayer. However, since all these contractual provisions are identical, Mayer has raised a meritorious factual dispute as to the accuracy of his credit report. The Eleventh Circuit has stated that the FCRA imposes a "maximal accuracy standard" and to state a claim, a plaintiff must show that a report is "factually incorrect, objectively likely to mislead its intended user, or both." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). Mayer has pled a FCRA claim against HICV by plausibly alleging that, due to the liquidated damages provision in his contract, Mayer's credit report contained a factual inaccuracy or was objectively likely to mislead. Therefore, HICV's Motion to Dismiss will be denied with respect to the payment dates after July 2017.

*Mayer*, Case No. 6:20-cv-2283-GAP-EJK, Doc. 28 at 7-9.

Based on the foregoing authority, the undersigned finds that since the *Mayer* plaintiff and Plaintiffs here raise similar allegations and a nearly identical FCRA claim with respect to the *disputed* information in the letters to Experian and the liquidated damages clause, Plaintiffs have stated a FCRA claim with respect to the "zero-balance due" on the Debt.

### 2. Undisputed Information – Other inaccuracies.

However, like the court in *Mayer*, the undersigned makes a distinction between disputed and undisputed information. The plaintiff in *Mayer* sent letters to Experian stating that the dates associated with the dispute were from July 2017 through the present. *Mayer*, Case No. 6:20-cv-2283-GAP-EJK, Doc. 32 at 2. The letters stated that the basis for the dispute was that the plaintiff terminated the agreement and that, pursuant to its terms, he owed no balance. *Id*. The plaintiff's

complaint also contained allegations regarding factual inaccuracies with "no data" for February 2016, May 2016, and July 2016, but the court found that the plaintiff never disputed this information to Experian. *Id*. at 4-5. So, while the *Mayer* court allowed the plaintiff to proceed with respect to the dates raised in the letters, it dismissed the plaintiff's FCRA claim with respect to the undisputed information. *Id*.

The undersigned agrees with HICV that Plaintiffs' Amended Complaint suffers the same defect. As stated in *Mayer*, the FCRA does not require a credit reporting agency to investigate the accuracy of the credit data if it is not disputed, and a furnisher is only obligated to investigate the accuracy of data when a consumer does not dispute the accuracy of that data with the credit reporting agency. 15 U.S.C. §§ 1681i(a)(1)(A), (b)(1).

Here, Plaintiffs' letters to Experian explicitly state that the dates associated with the dispute are June 2019 to the present, identify the account at issue, explain that the dispute involves the termination of the Orange Lake/Wilson Resource Finance account, and request an updated status to show the account is closed with a zero balance as of June 2019. Doc. 14-6 at 2, 14-8 at 2, 14-10 at 2, 14-13 at 2, 14-15 at 2, 14-17 at 2-3.

These letters attached to the Amended Complaint do not dispute the accuracy of any other data. Further, while Plaintiffs plead that the Experian *responses* to the disputes reflect additional factual inaccuracies and incomplete information (Doc 14 at 15-16, 17-18, 19, 20, 21, 23), there is no allegation that Plaintiffs actual dispute relates to anything other than the "factual reporting of the tradeline account associated with the Debt." *See id*. Even though Plaintiffs maintain in the response that HICV *reported* inaccurate information that they self-describe as "separate from HICV's ongoing reporting of a balance allegedly owed by Plaintiffs as due and past due," what is

glaringly absent from the Plaintiff's Response is any contention that this information was disputed in the allegations. *See* Doc. 24 at 16.

As such, the undersigned recommends that Plaintiffs only state a FCRA claim with respect to the information disputed to Experian.

**V.     Conclusion**

It is **RECOMMENDED** that HICV's Motion to Dismiss (Doc. 16): be **GRANTED in part** to the limited extent that the Court find that Plaintiffs have failed to state an FCRA claim in Count III with respect to information reported to Experian that Plaintiffs do not allege was disputed; and the Motion (Doc. 16) be **DENIED in all other respects**.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 22, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy